UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

OSMOND S. BROWN,

                                    Plaintiff                                    DECISION AND ORDER

-vs-
                                                                                 10-CV-6238 CJS
SUPERIOR CONTRACT CLEANERS,

                                    Defendant
_____


APPEARANCES



For Plaintiff:                Osmond S. Brown, *pro se*
                              370 Thurston Road
                              Rochester, New York 14611

For Defendant:                Jeffrey J. Calabrese, Esq.
                              Harter, Secrest & Emery LLP
                              1600 Bausch & Lomb Place
                              Rochester, New York 14604-2711


INTRODUCTION

        This is an action alleging discrimination and retaliation, pursuant to Title VII of the

Civil Rights Act of 1964 ("Title VII), as amended, 42 U.S.C. § 2000e *et seq.,* and the

Americans With Disabilities Act ("ADA"), 42 U.S.C. § 12112 *et seq.*   Now before the Court

is Defendant's motion to dismiss (Docket No. [#6]).   The application is granted.

BACKGROUND

Unless otherwise noted, the following facts are taken from Plaintiff's Amended Complaint [#4].[1][2]  Plaintif is a black male of Jamaican national origin.  Plaintiff was employed by Defendant for approximately three months, between July 2008 and October 2008.  *See*, Amended Complaint [#4] at ¶ ¶ 4-5.  According to Plaintiff, he was hired by Ron LaDeau ("LaDeau"), who met him at a job fair and told him that he was "just the man we are looking for." Docket No. [#11] at 4.  On October 31, 2008, LaDeau terminated Plaintiff's employment. On February 17, 2009, Plaintiff filed a complaint with the New York State Division of Human Rights ("NYSDHR") and U.S. Equal Employment Opportunity Commission ("EEOC").  In his NYSDHR complaint, when asked to explain why he believed that he had been discriminated against, Plaintiff wrote: "Jose always jump on my back, I say I didn't like it, he say he didn't like Jamaican." Docket No. [#6-4] at 15.  As discussed further below, "Jose" was Plaintiff's immediate supervisor.  When asked to state "what the discrimination consisted of," Plaintiff stated  "Sexual harassment, working without the right tool I complain and got fired." *Id*. Plaintiff also indicated that he was discriminated against because of his "nationality." *Id*. at 14. On February 3, 2010, the EEOC issued Plaintiff a right-to-sue letter.

On April 30, 2010, Plaintiff commenced this action.  Plaintiff alleges that he was discriminated against on the basis of his Jamaican national origin. Amended Complaint [#4]

---

[1] Plaintiff's original Complaint [#1] is essentially identical to the Amended Complaint, except that it has various attachments, including  a right-to-sue letter, correspondence from the New York State Division of Human Rights.

[2] *See, Alston v. Bendheim*, 672 F.Supp.2d 378, 383 -384 (S.D.N.Y. 2009) ("The Court is not limited to the four corners of the complaint, but may consider outside documents which are integral to it regardless of whether attached to the complaint, so long as the pleader has notice of them or refers to them.") (citation omitted).

¶ 14.  On the form discrimination complaint that he used to draft his Amended Complaint, Plaintiff checked boxes indicating that Defendant discriminated against him by failing to provide him with accommodations during the job application process, failed to provide him with accommodations to perform the essential functions of his job, harassed him, and retaliated against him by terminating his employment. *Id*. at ¶ 13.  However, Plaintiff's actual description of his claim is as follows:

> I was terminate[d] because I complain[ed] about acid and other c[h]emical use bother me and I just say what if I call O.S.H.A. to complaint.  My supervisor say I would be fired.  And because he like to come up behind me and hug me I say don't do that he did it two weeks in a row and say he don't like you Jamaican,[3] and they lied about my employment time and my supervisor's employment time.

*Id*. at ¶ 19.  Plaintiff further states that Defendant accommodated him by providing him with "a dust mask," which was "very effective." *Id*. at ¶ ¶ 23-24.[4]  Plaintiff does not claim to have any type of disability, and he checked a box indicating that Defendant did not consider him to have a disability. *Id*. at ¶ 14(h).

Attached to the original Complaint [#1] is a copy of a complaint that Plaintiff filed with the U.S. Department of Labor, Occupational Safety and Health Administration ("OSHA"). Complaint [#1] at 23-25.  The Complaint indicated that Plaintiff was hired to perform cleaning services in July 2008, and that part of the cleaning process involved the use of acid.  Plaintiff

---

[3] In a subsequent submission, Plaintiff explains this incident further, in a manner that indicates that Jose playfully jumped on him:  "Jose came up behind me hug me and try to climb on my back, so in fright I jump forward and could have slip and fall.  So I say don't do that man, he say you were scare?  I say don't do that again please, [sic] You see why I don't play on the job, a co/worker [sic] by the name of Juan spray some water on one of his friend and security saw it and immediately he was fired.  A couple of days later, Jose did it again, so I yelled at him and say I told you not to do that again he say you don't like it?  I don't like you Jamaican, so I say suite yourself." [sic] Docket No. [#9] at 34.

[4] Plaintiff's original Complaint [#1] indicates that Defendant gave him a "box of dust mask," which was "not effective."  As discussed further below, the reference to the dust mask is contained under a section of the form complaint entitled, "For Litigants Alleging An Americans With Disabilities Act Claim," although Plaintiff did not check the box indicating that he was asserting an ADA claim.

stated that the acid fumes bothered him, and that Defendant gave him "dust masks," which "helped a little bit."  Apparently, Plaintiff had no difficulties with any staff member until "late September or early October" 2008, when Defendant "hired a supervisor named Jose." Plaintiff states that Jose told him that "he didn't like Jamaicans."  Plaintiff stated that on October 31, 2008, Jose told him that he was taking too long to perform a task, and Plaintiff responded by asking what would happen if he called OSHA.  Plaintiff stated that he threatened to call OSHA because of "concerns [he] had with the acid and trying to work too fast." *Id*. at 24.  Plaintiff indicated that, a short time later his supervisor, LaDeau, came to him, and said that Jose had told him that Plaintiff was "moving too slow and [refusing] to do some work."  LaDeau then terminated Plaintiff's employment.  *Id*.  Plaintiff concluded the OSHA complaint by stating:  "I believe I was fired because Jose did not like me and because I asked him about calling OSHA." *Id*. at 25.  On January 29, 2009, OSHA notified Plaintiff that it had investigated his complaint and found "no reasonable cause to believe that [Defendant] violated the Act." Pl. Response [#9] at 21.

On December 20, 2010, Defendant filed the subject motion [#6] to dismiss the Amended Complaint, pursuant to FRCP 12(b)(1) & 12(b)(6).  Defendant views the Amended Complaint as attempting to state a claim under the Americans with Disabilities Act ("ADA"), as well as a claim under Title VII.  Defendant maintains that the Amended Complaint fails to plausibly allege any claim, for discrimination or retaliation, under Title VII or the ADA.  Plaintiff filed several responses to the motion, which the Court has considered. *See*, [#9], [#11][5], and

---

[5]In this submission, Plaintiff offers another explanation for why he believes that Jose did not like him:  "It's like Jose hates me because any time I am watching (CNN news) every day they talk about a little girl that was missing in Florida her name was Kyla I think, I just wanted to hear if the little girl have been found, Mr. Jose would just come up and change the channel to wrestling, it happen all the time, and there were two television sets in the lunch room." [#11] at 9.

[#13].

On December 23, 2010, Plaintiff filed a motion for appointment of counsel, which the Court denied.  In support of his motion for appointment of counsel, Plaintiff described his claim as follows:  "I was discriminated [against] because I spoke out against some bad practise," [sic], apparently referring to his veiled threat to contact OSHA.[6]

On August 11, 2011, Plaintiff and Counsel for Defendant appeared before the undersigned for oral argument.  At that time, Plaintiff indicated that Defendant did not fire him because he was Jamaican, or for any other reason, except the fact that he threatened to contact OSHA.  Plaintiff stated, for example, that the termination of his employment was not connected to the incident where Jose jumped on his back.[7]  Plaintiff stated that he really did not want to bring a lawsuit, because he liked the company and LaDeau, but felt that he needed to do something because his feelings were deeply hurt.

DISCUSSION

In ruling upon a motion to dismiss made pursuant to FRCP 12(b)(6), the Court must construe

> the complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor. Although the pleading standard is a liberal one, bald assertions and conclusions of law will not suffice. To survive dismissal, the plaintiff must provide the grounds upon which her claim rests through factual allegations sufficient to raise a right to relief above the speculative level.

*Reddington v. Staten Island Univ. Hosp.*, 511 F.3d 126, 131 (2d Cir. 2007) (citations and

---

[6] It would generally not be appropriate to consider such a motion in connection with a Rule 12(b)(6) motion.  Nevertheless, Plaintiff's statement reiterates the statements in his complaints, indicating that he believes he was fired because he threatened to contact OSHA.

[7] At oral argument, Plaintiff explained that he did not like Jose jumping on his back, because it startled him.  Plaintiff indicated that he worked in an isolated area, and usually had a screwdriver in his hand, and he was worried that if Jose jumped on him and startled him, he might accidentally injure him.

internal quotation marks omitted).  In this regard, the Court is limited as to what evidence it can consider:

> In considering a motion under Fed.R.Civ.P. 12(b)(6) to dismiss a complaint for failure to state a claim on which relief can be granted, the district court is normally required to look only to the allegations on the face of the complaint. If, on such a motion, matters outside the pleading are presented to and not excluded by the court, the court should normally treat the motion as one for summary judgment pursuant to Fed.R.Civ.P. 56.  In any event, a ruling on a motion for dismissal pursuant to Rule 12(b)(6) is not an occasion for the court to make findings of fact.
>
> In certain circumstances, the court may permissibly consider documents other than the complaint in ruling on a motion under Rule 12(b)(6). Documents that are attached to the complaint or incorporated in it by reference are deemed part of the pleading and may be considered.  In addition, even if not attached or incorporated by reference, a document upon which the complaint solely relies and which is integral to the complaint may be considered by the court in ruling on such a motion.

*Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) (citations and internal quotation marks omitted).

Additionally, where, as here, the non-moving party is proceeding *pro se*, the court must interpret that party's supporting papers liberally, that is, interpret them "to raise the strongest arguments that they suggest." *Fulton v. Goord*, 591 F.3d 37, 43 (2d Cir. 2009) (citation omitted).

*Title VII*

Plaintiff brings this action under Title VII, which "makes it unlawful for an employer to discriminate against any individual with respect to the 'compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.'" *Richardson v. New York State Dep't of Correctional Servs.*, 180 F.3d 426, 436 (2d Cir. 1999)(citations omitted), *abrogated on other grounds by Kessler v.*

*Westchester County Dept. of Soc. Servs.*, 461 F.3d 199 (2nd Cir. 2006).  As discussed above, Plaintiff admits that his Jamaican nationality had nothing to do with the termination of his employment.  Instead, he indicates that the only reason he was fired was because he threatened to contact OSHA.  Such a claim is not covered by Title VII.

Even without considering Plaintiff's statements at oral argument, it is clear that the Amended Complaint does not state a claim under Title VII.  In that regard, the Amended Complaint expressly purports to asserts a claim based only on national origin.  Although the Amended Complaint indicates that Jose playfully hugged Plaintiff on two occasions, which Plaintiff did not like, the Court does not understand him to be alleging a sex harassment claim, nor would such allegation be sufficient to support such a claim.  As far as any claim for national-origin discrimination, the Amended Complaint states only that Jose told Plaintiff that he did not like Jamaicans, in response to Plaintiff telling Jose that he did not like being hugged.  Such an isolated, stray comment is insufficient to establish a discrimination claim under Title VII. This is particularly true here, since any fair reading of the Amended Complaint indicates that LaDeau fired Plaintiff because Plaintiff had a disagreement with Jose over working conditions, and then threatened to file a complaint with OSHA.  Specifically, Plaintiff alleges that he and Jose had an argument about the speed at which Plaintiff was working, to which Plaintiff asked what would happen if he filed a complaint with OSHA,[8] and that less than an hour later he was fired.[9]  Plaintiff was fired by LaDeau,  whom Plaintiff describes as "a

---

[8]Plaintiff indicates that Jose lied to LaDeau about him threatening to file a complaint with OSHA, but he admits that in response to Jose's criticism, he asked what would happen if he contacted OSHA.

[9]"I told Jose, 'What if I called OSHA' because of the concerns I had with the acid and trying [to] work too fast.  Jose then told me that I would get fired.  I continued cleaning in the kitchen.  About a half hour to an hour later Ron showed up.  Ron called me to an area near the locker room.  A short time later, Jose showed up.  Jose told Ron that I was going to call OSHA.  Ron did not say anything, but reached into his pocket and took out my paycheck.  He handed me the check and said he had to let me go." Complaint [#1] at 24.

good boss." Complaint [#1] at 24.   There is no indication that LaDeau disliked Jamaicans, or

that Plaintiff's nationality had anything to do with the termination of his employment.  To the

contrary, Plaintiff indicates that just three months earlier, LaDeau had personally hired him,

telling him that he was "just the man we are looking for."  Moreover, Plaintiff states that prior

to October 31, 2008, LaDeau often praised him. Docket No. [#11] at 10 ("That's why I always

clean thoroughly, because Ron the manager say to me all the time you are a good man

Osmond.").   There is no reason to think that Ladeu suddenly developed a bias against

Jamaicans, which affected his decision to terminate Plaintiff's employment.   At most, the

Amended Complaint suggests that LaDeau terminated Plaintiff's employment because Jose

told him that Plaintiff was too slow and was refusing to do work, and/or because Jose told him

that Plaintiff was threatening to contact OSHA.   Neither scenario would be covered by Title

VII.  Accordingly, the Title VII claim is dismissed.

> *Americans With Disabilities Act*

Again, Plaintiff indicated at oral argument that he is not claiming that he was

discriminated against because of a disability.  Nor does the Amended Complaint support such

a claim.  In that regard, Plaintiff has filed two complaints in this action, and on neither one did

he check the box indicating that he was asserting an ADA claim.   Nevertheless, in both

complaints he includes an allegation concerning his use of a dust mask.  Plaintiff's OSHA

complaint clarifies that he used some type of acid for cleaning, which irritated his breathing,

and that Defendant provided him with a mask.  The Amended Complaint indicates that the

dust masks were "very effective." Amended Complaint [#4] at ¶ 24.  Such allegations do not

plausibly state an ADA claim.  Moreover, Plaintiff cannot state an ADA claim merely by

checking boxes indicating that Defendant failed to accommodate him, particularly where, as

in this case, he affirmatively states that Defendant *did* accommodate him. *See, DiProjetto v. Morris Protective Serv.*, 489 F.Supp.2d 305, 308-309 (W.D.N.Y. 2007) (Merely checking a box on a form discrimination complaint is not sufficient to state a plausible claim under Title VII or the ADA), *affirmed*, 306 Fed. Appx. 687, 2009 WL 102751 (2d Cir. Jan. 15, 2009).  Plaintiff also did not include any claim of disability discrimination in his NYSDHR/EEOC complaint, therefore such a claim was not administratively exhausted.  Accordingly, to the extent that the Amended Complaint contains an ADA claim, such claim is dismissed.

*Retaliation*

Title VII prohibits an employer from retaliating against an employee who engages in protected activity.  It is well settled that "[t]he term 'protected activity' refers to action taken to protest or oppose statutorily prohibited discrimination." *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 566 (2d Cir. 2000).   In this case, Plaintiff has not stated a plausible claim for retaliation, since he has not alleged that he engaged in protected activity that is covered by Title VII. Specifically, threatening to make an OSHA complaint against one's employer is not protected activity under Title VII. *See, Rich v. Associated Brands, Inc.*, 379 Fed. Appx. 78, 80, n.1 (2d Cir. May 28, 2010) ("Title VII  . . . protects against discrimination based on an 'individual's race, color, religion, sex, or national origin,' but not disability.") (citation omitted); *see also, Santucci v. Veneman*, No. 01 CIV. 6644(CBM), 2002 WL 31255115 at *3 (S.D.N.Y. Oct. 8, 2002) ("[T]he protected activity  alleged [in a Title VII retaliation case] must involve some sort of complaint about a type of discrimination that Title VII forbids.") (citation omitted); *Washington v. M. Hanna Const. Inc.*, 299 Fed. Appx. 399, 2008 WL 4898680 at *2 (5th Cir. Nov. 14, 2008) (Because Title VII does not encompass OSHA violations, employee's OSHA complaint was not protected activity under Title VII); *Rodriguez v. Beechmont Bus Serv., Inc.*,

173 F.Supp.2d 139, 150 (S.D.N.Y. 2001) (OSHA complaint is not protected activity under Title VII).

*Leave to Replead*

Plaintiff has not requested permission to replead.  Nevertheless, a district court "should not dismiss [a *pro se* plaintiff's complaint] without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (citation omitted).  Here, amendment would likely be futile, since it does not appear that Plaintiff has any viable federal claim against Defendant.  In that regard, in addition to the two complaints that he has filed, Plaintiff has made a number of supplemental submissions, none of which indicate that he could submit an amended pleading that would survive dismissal.  Accordingly, leave to replead is denied.

## CONCLUSION

Defendants' motion [#6] is granted, and this action is dismissed with prejudice.  The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a), that any appeal from this Order would not be taken in good faith and leave to appeal to the Court of Appeals as a poor person is denied. *Coppedge v. United States*, 369 U.S. 438 (1962).  Further requests to proceed on appeal *in forma pauperis* should be directed on motion to the United States Court of Appeals for the Second Circuit in accordance with Rule 24 of the Federal Rules of Appellate Procedure.

SO ORDERED.

Dated:          Rochester, New York
                September 9, 2011

                                    ENTER:


                                     /s/ Charles J. Siragusa
                                    CHARLES J. SIRAGUSA
                                    United States District Judge